UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| LEON ERNIE JORDAN | CIVIL ACTION NO. 26-0090 |
| | SECTION P |
| VS. | |
| | JUDGE TERRY A. DOUGHTY |
| STATE OF LOUISIANA, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

## REPORT AND RECOMMENDATION

Plaintiff Leon Ernie Jordan, who proceeds pro se and in forma pauperis, filed this proceeding on approximately January 9, 2026, under 42 U.S.C. § 1983. He names the following Defendants: the State of Louisiana, Michelle Collier, Officer J. Abbas, Maxie Denise England, Tyrone Gooding,[1] and Ochsner LSU Health-Monroe.[2] For reasons that follow, the Court should dismiss Plaintiff's claims.

## Background

Plaintiff claims that on approximately March 6, 2022, Michelle Collier, who he refers to as Psychic Priestess Sekhmet, lied to police officers to obtain a restraining order against him. [doc. # 5, p. 3]. Plaintiff suggests that he was later arrested for violating the restraining order after he attempted to apologize to Collier. *Id.* at 4. When he "finally" arrived in court for the charge, "they forced [him] to sign a plea under duress." *Id.*

---

[1] Plaintiff also uses the spelling, "Goodin."

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Plaintiff claims that Maxie Denise England (i) kicked him out of a house and (ii) instructed two other individuals to beat him. [doc. #s 5, pp. 4-5; 11, p. 5]. He claims that the three individuals all conspired against him. [doc. # 11, p. 6]. He also claims that England "acted with hostility toward[s] [his] religious expression and viewpoints." *Id.*

Plaintiff claims that England lied when she told officers that he used narcotics; as a result, he was arrested and charged with trespassing. [doc. # 5, p. 5]. Plaintiff also claims that the two individuals who beat him accused him of being under the influence of narcotics. [doc. # 11, p. 6].

Plaintiff next states that on July 25, 2025, he "was laying in the grass of Wossman High School" when the principal performed a welfare check on him. [doc. # 5, p. 5]. Plaintiff informed the principal that he had an important message for King Charles. *Id.* Plaintiff was unarmed. [doc. # 11, p. 1]. Plaintiff claims that Officer J. Abbas arrived and deployed his taser, which infuriated Plaintiff. [doc. # 5, p. 5]. Plaintiff told the officer that he had "an important message for the king." *Id.* Plaintiff removed the prongs of the taser and, after the officer allegedly tried to punch him, the two "engage[d] in combat." *Id.* Either Officer Abbas or the other officer tackled Plaintiff to the ground. [doc. # 11, p. 1]. "With the help of his fellow officer, they" handcuffed Plaintiff. [doc. # 5, p. 5]. He claims that while in handcuffs, an officer pushed his hands upward, causing nerves in his right hand to be numb for three months. *Id.* Plaintiff maintains that he was not "threatening, unstable, or criminally non-compliant[.]" [doc. # 11, p. 2]. Officers transported him to Ochsner LSU Health-Monroe "due to suspected dehydration." [doc. #s 5, p. 5; 11, p. 1].

Plaintiff claims that Officer Abbas "submitted reports or statements mischaracterizing Plaintiff as threatening or unstable despite Plaintiff being unarmed and transported for medical evaluation rather than arrested [sic]." [doc. # 11, p. 3].

Hospital employees sent Plaintiff to a psychiatric unit for evaluation. [doc. # 5, p. 6]. Plaintiff claims that from August 1-13, 2025, based solely on an officer's testimony, "they held [him] involuntarily and forced drugs upon [him] claiming [he] had schizo affect [sic] disorder." *Id.*

Plaintiff worked at Fit 365 Nutrition from August to September 2025. [doc. # 5, p. 6]. He claims that Tyrone Goodin failed to pay him all the wages he earned. *Id.* at 6-7.

Plaintiff states that on December 24, 2025, at Walmart, an officer threatened to issue him a trespass warning if he returned. [doc. # 11, pp. 2, 4].

Plaintiff seeks compensation, punitive damages, declaratory relief, nominal damages, and injunctive relief. [doc. #s 5, p. 8; 11, p. 4].

## Law and Analysis

**1. Preliminary Screening**

Because he is proceeding in forma pauperis, Plaintiff's Complaint is subject to screening under § 1915(e)(2), which provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the

3

unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. State Action**

Plaintiff claims that on approximately March 6, 2022, Michelle Collier, who he refers to as Psychic Priestess Sekhmet, lied to police officers to obtain a restraining order against him. [doc. # 5, p. 3]. He claims that Maxie Denise England (i) kicked him out of a house and (ii) instructed two other individuals to beat him. [doc. #s 5, pp. 4-5; 11, p. 5]. He claims that the three individuals all conspired against him. [doc. # 11, p. 6]. He also claims that England "acted with hostility toward[s] [his] religious expression and viewpoints." *Id.*

5

Plaintiff claims that England lied when she told officers that he used narcotics; as a result, he was arrested and charged with trespassing.  [doc. # 5, p. 5].  Plaintiff also claims that the two individuals who beat him accused him of being under the influence of narcotics.  [doc. # 11, p. 6].

Plaintiff worked at Fit 365 Nutrition from August to September 2025.  [doc. # 5, p. 6]. He claims that Tyrone Goodin failed to pay him all the wages he earned.  *Id.* at 6-7.

As above, to state a claim under Section 1983 a plaintiff must allege that a defendant acted "under color" of state law.  42 U.S.C. § 1983.  "Private individuals generally are not considered to act under color of law, *i.e.,* are not considered state actors . . . ."  *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005).  "[A] private individual may . . . act under color of law in certain circumstances, such as when a private person is involved in a conspiracy or participates in joint activity with state actors."  *Id.*

Here, Collier, England, Goodin, and the two unidentified assailants are plainly private actors, and Plaintiff does not plausibly allege, for instance, that any of them conspired with a state actor, participated in joint activity with a state actor, or otherwise acted under color of state law.  *See Thomas v. Abebe*, 2020 WL 6375119, at *2 (5th Cir. Oct. 29, 2020) (finding, where the plaintiff alleged that his son stole property while he was incarcerated, that "absent any allegation that the defendants were 'jointly engaged with state officials in the challenged action,' [the plaintiff] fails to state a claim under § 1983.").[3]

---

[3] *See also Roman v. Anthony*, 848 F. App'x 633 (5th Cir. 2021) ("Roman has not established that his complaint sets forth a facially plausible claim for relief because he has failed to allege facts or assert any argument addressing whether the defendants acted under color of state law."); *Montgomery v. Walton*, 759 F. App'x 312, 315 (5th Cir. 2019) ("Montgomery pleads no specific facts regarding the connection between the public officials and private citizens or where or when the criminal conduct occurred.  In short, the allegations are incomprehensible for purposes of

That Collier and England contacted the police about Plaintiff or filed a false police report does not, absent more, render them state actors. "The execution by a private party of a sworn complaint, which forms the basis for an arrest, is, without more, not sufficient to make that party's acts state action." *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1079 (5th Cir. 1985). "[E]vidence that a private citizen reported criminal activity or signed a criminal complaint does not suffice to show state action on the part of the complainant in a false arrest case." *Moody v. Farrell*, 868 F.3d 348, 353 (5th Cir. 2017). Rather, "the plaintiff must show that the police in effecting the arrest acted in accordance with a preconceived plan to arrest a person merely because he was designated for arrest by the private party, without independent investigation. The action by the police constitutes an abdication of state authority to a private party that is sufficient to cause the private party's acts to become state action."[4] *Sims*, 778 at 1079 (internal quotation marks and quoted sources omitted).

Here, Plaintiff does not allege that officers arrested him under a preconceived plan and merely because Collier or England designated him for arrest. Nor does he plausibly allege that the arresting officers failed to perform an independent investigation. *See Clark v. Thibodaux City*, 787 F. App'x 198, 201 (5th Cir. 2019). While Collier and England could have influenced

---

stating a claim of conspiracy against the defendants to deprive him of any cognizable constitutional rights.").

[4] "For example, in *Smith v. Brookshire Bros., Inc.*, the plaintiffs showed that pursuant to a prearranged plan, the defendant, a grocery store, 'could have people detained [for shoplifting] merely by calling the police and designating the detainee.'" *Moody*, 868 F.3d at 353 (quoting *Smith v. Brookshire Bros, Inc.,* 519 F.2d 93, 94 (5th Cir. 1975) (per curiam)). "In *Bartholomew v. Lee*, on the other hand, the fact that 'the plaintiffs were arrested in part . . . at the request of the [mall] security personnel, and not *wholly* based on any independent observations of the officers,' was not enough to show joint action between the mall and the police." *Id.* (quoting *Bartholomew v. Lee*, 889 F.2d 62, 63 (5th Cir. 1989) (alteration and emphasis in original)).

the actions of the arresting officers, Plaintiff does not plausibly allege that they determined the arresting officers' actions. *See Moody*, 868 F.3d at 354 ("Farrell . . . influenced the actions of the police but did not determine them."); *Hernandez v. Schwegmann Bros. Giant Supermarkets*, 673 F.2d 771, 772 (5th Cir. 1982) (opining that a police officer's reliance on "information provided by citizens who witnessed the events" does "not convert the informing party into a state actor" where the officer makes "his own determination of cause to arrest.").

Accordingly, the Court should dismiss Plaintiff's claims against Collier, England, Goodin, and the unidentified assailants.

### 3. Unidentified Actors

Plaintiff claims that when he "finally" arrived in court for allegedly violating a restraining order against Collier, "they forced [him] to sign a plea under duress." Plaintiff also claims that in July 2025, while in handcuffs, an officer pushed his hands upward, causing nerves in his right hand to be numb for three months.

Plaintiff, however, does not identify who "they" are; nor does he identify the officer in question or name the officer as a defendant. The Court should dismiss these ostensible claims.

### 4. Excessive Force

Plaintiff states that on July 25, 2025, he "was laying in the grass of Wossman High School" when the principal performed a welfare check on him. [doc. # 5, p. 5]. Plaintiff informed the principal that he had an important message for King Charles. *Id.* Plaintiff was unarmed. [doc. # 11, p. 1]. Plaintiff claims that Officer J. Abbas arrived and deployed a taser, which infuriated Plaintiff. [doc. # 5, p. 5]. Plaintiff told the officer that he had "an important message for the king." *Id.* Plaintiff removed the prongs of the taser and, after the officer allegedly tried to punch him, the two "engage[d] in combat." *Id.* Either Officer Abbas or

another officer tackled Plaintiff to the ground.  [doc. # 11, p. 1].  "With the help of his fellow officer, they" handcuffed Plaintiff.  [doc. # 5, p. 5].  Plaintiff maintains that he was not "threatening, unstable, or criminally non-compliant[.]"  [doc. # 11, p. 2].

"To establish a Fourth Amendment violation based on an officer's use of excessive force, the plaintiff must show: (1) an injury; (2) which resulted from the use of force that was clearly excessive to the need; (3) the excessiveness of which was objectively unreasonable."  *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)).  "Since an excessive force claim arises out of the Fourth Amendment, the test applied is whether the force was reasonable."  *Frank v. Parnell*, 2023 WL 5814938, at *3 (5th Cir. Sept. 8, 2023) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  "This reasonableness inquiry is an objective one: 'the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  *Id.*

"In making this determination, a court should consider the totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 728-29 (5th Cir. 2018) (quoting *Graham*, 490 U.S. at 396).  "Additionally, while not exclusive and outlined 'only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force,' the court can also consider 'the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.'"  *Frank*, 2023 WL at

9

5814938 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

Here, Plaintiff does not allege that he suffered any injury when Officer Abbas deployed a taser. Plaintiff only states that he was infuriated and that he was later treated for dehydration. He also alleges that Officer Abbas engaged in combat with him, but he does not elaborate on any uses of force or allege that the combat caused him injury. He alleges that either Officer Abbas or another officer tackled him to the ground, but once more he does not describe any injury.

Accordingly, the Court should dismiss these claims. *See McKinney v. Painter*, 2022 WL 287558, at *2 (5th Cir. Jan. 31, 2022) (affirming the dismissal of an excessive force claim "for failure to state a claim and as frivolous" where, "*critically*," the plaintiff failed to allege "that he suffered any injuries as a result" of jailers choking him and using a weapon on him) (emphasis added); *Smallwood v. Castillo*, 289 F. App'x 803, 805 (5th Cir. 2008) (affirming dismissal on preliminary review where the plaintiff did "not allege a de minimis injury" and therefore failed "to present a basis for an Eighth Amendment claim of excessive force."); *Haddix v. Kerss*, 203 F. App'x 551, 554 (5th Cir. 2006); *Est. of Parker v. Mississippi Dep't of Pub. Safety*, 140 F.4th 226, 243 (5th Cir. 2025) ("Because Plaintiffs do not allege that La'Mello suffered any injury from the ramming, they have not shown that Deputy Allen used excessive force . . . .").

## 5. Lying in a Police Report

Plaintiff claims that Officer Abbas "submitted reports or statements mischaracterizing Plaintiff as threatening or unstable despite Plaintiff being unarmed and transported for medical evaluation rather than arrested [sic]." [doc. # 11, p. 3]. He alleges that because of Abbas's mischaracterization in the report, individuals at a hospital sent him to a psychiatric unit, held him involuntarily, and "forced drugs upon" him. [doc. # 5, p. 6].

This allegation does not amount to a constitutional violation. *See Barber v. Quarterman*,

437 F. App'x 302, 304 (5th Cir. 2011) (concluding, where the plaintiff alleged that "officials falsified a report in violation of his right to due process and that others conspired with them to falsify the report[,]" that the allegations did "not state a claim under § 1983 because [the plaintiff] identified no constitutional violation."); *see LeBlanc v. Louisiana State Penitentiary*, 2015 WL 5011984, at *4 (M.D. La. July 28, 2015), report and recommendation adopted, 2015 WL 5025242 (M.D. La. Aug. 24, 2015); *Ryals v. El Paso Cty.*, 2015 WL 3540951, at *10 (W.D. Tex. June 3, 2015).  Accordingly, the Court should dismiss this claim.

## 6. Threats

Plaintiff states that on December 24, 2025, at Walmart, someone told him that the was banned from the premises.  [doc. # 11, p. 2].  He claims that an officer threatened to issue him a trespass warning if he returned.  *Id.* at 2, 4.

Verbal threats, without more, do not support a claimed constitutional violation.  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983).  Allegations of mere verbal abuse simply do not give rise to a cause of action under Section 1983.[5]  *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *Siglar*, 112 F.3d at 191.  Because Plaintiff does not state a claim of constitutional dimension, the Court should dismiss this claim.

## 7. State of Louisiana

Plaintiff names the State of Louisiana as a defendant.  Liability under 42 U.S.C. § 1983

---

[5] *See Gressett v. New Orleans City*, 779 F. App'x 260, 261 (5th Cir. 2019) (concluding, where the plaintiff alleged that an officer stood in his way, insulted him while holstering his taser and revolver, threatened him, and intimidated him, that though the officer's actions "may be unprofessional" and amounted to an "excess of zeal," they "did not violate [the plaintiff's] Fourteenth Amendment rights" and did not "constitute an abuse of power that 'shocks the conscience.'"

only applies to "person[s]" who deprive others of rights secured by the Constitution. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, Plaintiff's claims against the State of Louisiana should be dismissed.

**8. Ochsner LSU Health-Monroe**

Plaintiff names Ochsner LSU Health-Monroe as a defendant, but he does not raise a claim against it. At best, he alleges that "they" (unidentified individuals) sent him to a psychiatric unit, held him involuntarily, and involuntarily medicated him. [doc. # 5, p. 6]. But he does not raise any allegations against the entity, Ochsner LSU Health-Monroe. The Court should therefore dismiss Ochsner LSU Health-Monroe because Plaintiff does not state a claim against it.[6]

<u>**Recommendation**</u>

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Leon Ernie Jordan's claims be **DISMISSED WITH PREJUDICE** as legally frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by

---

[6] Even assuming Plaintiff did specifically fault the hospital for these actions, at best his claims sound in negligence or malpractice. *See Saucier v. Uchendu*, 2021 WL 2354600, at *7 (W.D. La. Mar. 1, 2021), report and recommendation adopted, 2021 WL 2345481 (W.D. La. June 8, 2021) ("In *White v. City of New Orleans*, the plaintiff claimed that she was unlawfully arrested; transported to UMCNO, where her blood was drawn without her consent; and then transported by ambulance to a mental hospital where she was subjected to medical testing and treatment against her will. . . . The court analyzed the factors prescribed by the Louisiana Supreme Court and found that the allegations set forth in her complaint fell within the statutory definition of malpractice . . . ."). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016).

this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 20th day of April, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge